### DECORA v. AMERICAN CARBIDE CO.

(Supreme Court, Appellate Division, Third Department. December 30, 1909.)

1. MASTER AND SERVANT (§ 125*)—MASTER'S DUTY—REPAIRS—KNOWLEDGE OF DEFECT.

 The master's duty to furnish a servant with safe appliances is violated by failure to repair only when he had notice, or might have known with reasonable diligence, of the need of repairs.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 243; Dec. Dig. § 125.*]

2. MASTER AND SERVANT (§ 150*)—MASTER'S DUTY—WARNING SERVANT.

 A master need not warn employés of the danger from a machine getting out of repair, unless there is reasonable ground to anticipate that it will do so.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 299; Dec. Dig. § 150.*]

3. MASTER AND SERVANT (§ 166*)—INJURIES TO SERVANT—SUPERVISION OF FELLOW SERVANTS—PROXIMATE CAUSE OF ACCIDENT.

 If the foot of plaintiff's fellow servant was on the floor, and not on the lever which operated the dies, when plaintiff was injured by the upper die of a press used in shaping tin can heads descending on his hand, the employer's failure to warn the fellow servant of the danger of retaining his foot upon the lever did not cause the accident.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 333; Dec. Dig. § 166.*]

4. MASTER AND SERVANT (§ 279*)—INJURIES TO SERVANT—SUPERVISION OF FELLOW SERVANTS—SUFFICIENCY OF EVIDENCE.

 In a servant's action for injuries caused by the upper die of a shaping machine dropping on the lower die while a fellow servant was operating the lever which controlled the dies, evidence *held* to show that the fellow servant must have known from his experience and the construction of the machine that his foot must be quickly removed from the lever to prevent a repetition of the stroke, and hence that the master was not negligent in instructing the fellow servant.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 973; Dec. Dig. § 279.*]

5. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE—CAUSE OF ACCIDENT.

 In an employé's action for injuries caused by the upper die of a can-shaping machine dropping on the lower die while a fellow servant was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

operating the lever which controlled the dies, evidence *held* to show that the accident was caused by the fellow servant unconsciously pressing the lever, causing the die to drop on plaintiff's hand.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959; Dec. Dig. § 276.*]

6. MASTER AND SERVANT (§ 239*)—INJURIES TO SERVANT—CONTRIBUTORY NEG-LIGENCE—METHOD OF WORK.

A machine for shaping the heads of tin cans was operated by a lever under the machine, pressure upon which with the foot caused the upper die to fall and shape the can. The dies operated 34 times a minute when not stopped by the lever. *Held*, that it was gross negligence for plaintiff, an employé, to put the can lids between the dies and remove them while another employé operated the lever; plaintiff not having been directed to work in that manner, and the danger of such method of work being obvious.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 749; Dec. Dig. § 239.*]

7. MASTER AND SERVANT (§ 155*)—INJURIES TO SERVANT—OBVIOUS DANGERS—WARNING SERVANT.

Where the danger from doing work in a certain manner was obvious, and as apparent to the servant as to his foreman, the latter's failure to warn the servant would not make the master liable for injuries caused by working in that manner.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 310; Dec. Dig. § 155.*]

8. MASTER AND SERVANT (§ 216*)—INJURY TO SERVANT—ASSUMED RISK—NEG-LIGENCE OF COEMPLOYÉS.

An employé assumes the risk of injury from the negligence of a co-employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 567–573; Dec. Dig. § 216.*]

Kellogg, J., dissenting.

Appeal from Trial Term, Clinton County.

Action by David G. Decora, by Gervis G. Decora, his guardian ad litem, against the American Carbide Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, COCHRANE, KELLOGG, and SEWELL, JJ.

Charles J. Vert, for appellant.

Weeds, Conway & Cotter (T. B. Cotter, of counsel), for respondent.

SMITH, P. J. Plaintiff has recovered a judgment of $1,000 for an injury sustained in the defendant's factory and claimed to have been caused by the defendant's negligence. The injury was to four fingers of his left hand, which were caught between two dies upon the punching press. This punching press was for the purpose of shaping the heads of tin cans. It was worked by a lever under the machine and at the right. By pressing on that lever the upper die would drop over the lower die, make the impression, and then recede. If the pressure be continued upon the lever, the action is continuous, and the upper die drops upon the lower die 34 times a minute. If the pressure be released, the power is taken from the die, and it does not drop again until the pressure is again applied. The plaintiff had worked upon this

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

machine a short time before the accident. The course of his work was to take a cover, which was unformed, and put over the lower die, press the lever, causing the upper die to drop upon the cover and give it shape, and after the die receded to take out the shaped die and the fringe of tin that had been cut off. He had thus shaped from 25 to 30 covers, and in some way cut his hand upon the tin. He stepped aside to bind his hand, and upon going back he found his co-employé Wemette operating the machine. Wemette asked him to assist him, and the plaintiff took a seat at his left, and for a time laid aside the covers after they were formed, which Wemette had taken out. Thereafter Wemette asked him to take the covers out from the dies after they were shaped. In this way the two worked for about half or three-quarters of an hour, when in removing one of the covers, after it had been shaped, the upper die came down and crushed the four fingers of his left hand. Notice was served under the employer's liability act (Consol. Laws, c. 31, § 200), and this action was commenced.

It will be seen that the plaintiff at no time had control of this lever which operated these dies. That was always under the foot of his co-employé Wemette. The learned trial judge told the jury that this accident might have happened in three ways: First, Wemette may have pressed the lever for a second time, which caused the upper die to drop upon the plaintiff's hand; and, if so, the plaintiff could not recover, because he was injured by the negligence of a coservant. Second, Wemette may have retained his foot upon the lever and thus allowed the lever to drop a second time, causing the accident; in which case the jury were instructed that they might find for the plaintiff, provided that they should find that Wemette was not properly instructed by the master as to the consequences which would follow from his retaining his foot upon the lever. Third, that some dust or dirt may in some way have accumulated in the machine, so as to have prevented the release of the clutch when the foot was raised from the lever, and thereby have caused the die to continue to drop. As to the last possibility the court in substance charged:

"If it be true, as testified to by the plaintiff and some of his witnesses, that the second descent of the die, the repeating of the operation of stamping, was not caused by Wemette at all, but by some abnormal condition in the machine, then it might be that that was a condition of which the plaintiff would not know, and against which he should have been warned. In these two instances there might be a recovery, provided the members of your body think the conduct of the officers of the defendant towards this plaintiff in the matter of instruction was not the conduct of men of reasonable prudence, who have a just regard for the safety and welfare of their employés."

It would hardly be just to the defendant to allow the jury to speculate that there might be some abnormal condition of the machine that might have caused this die to continue its operation and thus cause the accident. The case is barren of proof that this machine was out of order, or had become in any abnormal condition. If the machine had become in fact defective, there is no proof whatever that the master had had any notice of such a defect, so as to impose upon him any duty of repair or care. From all the evidence in the case, up to that

time, and ever since, the machine worked perfectly, as it was intended to work. The duty which rests upon a master to furnish a servant with safe appliances is broken by lack of repair only when the master had notice, or might with reasonable diligence have ascertained, of the need of repair. Nor is the master called upon to warn employés of the possibility or danger from a machine getting out of repair, without some proof giving reasonable ground to anticipate such an emergency. In this case there was not the slightest proof of such a danger.

But the main ground upon which this judgment is sought to be sustained is for failure of the master to warn Wemette that by retaining his foot upon the lever the press would continue to operate and the die would continue to drop. In this, however, the plaintiff encounters several difficulties. In the first place Wemette swears twice in his evidence that he did not know whether his foot remained upon the lever or not at the time it came down and caused the injury. He afterwards swears positively that his foot was upon the floor, and not upon the lever. If so, the failure to warn Wemette of the danger of retaining his foot upon the lever was not the cause of the accident. Again, it would be impossible to work that machine as much as either Wemette or plaintiff had worked it without learning that the foot must be quickly released in order to prevent a repetition of the stroke. With the machine operating 34 times in a minute, the operator cannot easily work between those dies without learning that fact, either by warning or experience. Still again, the plaintiff himself twice swears that at the time he put his hand in to take out the cover the upper die was stationary. Now, if there had been any flaw in the machine which prevented the lever, when released, from springing back, or if the second impact had been caused by Wemette retaining his foot upon the lever, that upper die could not have been stationary. It would have operated continuously and more rapidly than every other second, and if it had been so operating the plaintiff never would have put his hand between the dies to get the cover out. If the plaintiff's evidence be true, and this upper die was stationary even for a second, the irresistible inference is that Wemette must unconsciously have pressed the lever and thereby caused the die to drop. His evidence to the effect that his foot was upon the floor, after having twice before and upon the day previous sworn that he did not know whether or not his foot was upon the lever, is not sufficient to overcome the natural inferences as to the cause of the accident.

Moreover, it was gross negligence in the plaintiff to undertake that work while another man had control of the lever. That machine was never intended to be used in this way. The plaintiff was never directed so to work. It is true that both he and Wemette swore that the foreman came through the room while they were so working and did not object. His failure to warn the plaintiff of the danger in thus operating the machine could not make the master liable, because the danger was an obvious one, as clearly seen by the plaintiff as by the foreman; and the risk of injury through the negligence of a co-employé was one of the necessary risks assumed by the plaintiff in

entering the defendant's employment. The notice of injury served under the employer's liability act specifies no such negligence as a cause thereof. Nor was such negligence submitted to the jury as a ground of recovery.

We are of the opinion that the judgment and order must be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, COCHRANE, J., in result, except KELLOGG, J., dissenting in memorandum.

JOHN M. KELLOGG, J. (dissenting). Both the plaintiff and Wemette were green men, and knew but very little about the operation of the punch press. They were not mechanics. They had not been told that two men should not work upon the press, and when the superintendent saw these green men working it, he talked with them and made no suggestion as to the impropriety of their action. The company, therefore, permitted them to work the press in an improper manner.

In the manner in which this press was operated, it was necessary for the operator to put his hand between the upper and lower die to remove the plate which had been pressed, and to remove the parings or waste which had been left upon the lower die. The evidence tended to show that a poppet or spring should have been provided to throw the plate up, and that the operator should have a stick or little paddle to use in extracting the waste from between the dies, and thus avoid putting his fingers between them. If such a spring was not provided to throw out the plate, the little paddle would permit of its removal without putting the fingers of the operator between the dies. The only danger apparently accompanying the use of this press was that the hand or fingers of the operator might be caught between the dies, and the use of the spring and little paddle to extract the plate and waste practically avoided all that danger. The jury, therefore, had the right to say that the method which the defendant provided for operating the press was unusual and dangerous in itself, and that the plaintiff was not properly instructed as to the dangers or provided with the means by which they could be avoided.

I think, therefore, the judgment should be affirmed.